We will now hear arguments in the case of Edinboro College Park Apartments et al. versus Edinboro University Foundation and Dr. Wolman. Good afternoon. May it please the court, my name is Matthew Wolford and I represent Edinboro College Park Apartments and the three other plaintiff appellants in this appeal. I already spoke earlier about reserving three minutes for rebuttal. Granted. Thank you. Mr. Wolford, if the university decided to up the meal plan requirement and said the students instead of having to buy 20 meals have to buy 40 meals in the dining halls, would the local restaurants have a cause of action? Assume they didn't mandate broccoli. That would be its own cause of action. I haven't really thought about that. The whole parietal rule is something that Same scenario here. Instead of having to live on campus, you have to eat on campus. You can't go to the local pizza shops, you can't go to the local hoagie stores, you have to eat here. At least twice as much as you used to. Do those pizza stores and hoagie shops have causes of action? When you have a state university, the primary objective is to provide a quality education at the lowest possible cost. It's not to provide student housing, it's not to provide meals. The issue is not what is the primary responsibility for, but what are the tasks within the state law and which of their actions are mandated whether they're consistent with the state law mandate, without ranking their obligations or whether or not what they're doing is consistent with the discharges a state mandated. They're more than consistent with an overall framework of a constitutional duty and some statutes. You have to actually look at the statute. They're not going to provide housing though, are they? Let me just finish with him and then I'll move on. Okay, that's absolutely done. Good job. If the purpose of doing that was to raise money for the university, I think it would violate antitrust law. If the purpose was for some other reason that had something to do with actually running the university... So we need to get behind the reason? We need to get behind the reason as to why the students have to live on campus and why they have to eat on campus? Well, that's where the clear articulation of state policy comes from. If you look at this case, I've identified a number of overt acts that this anti-competitive agreement embodied both by the university and by the foundation. My opponents have chosen two to focus on, which is fine with me because we can look at those two. One is constructing the project itself and then the second one is the 2011 housing restriction expanding to the two-year program instead of the one-year program. They're not independent. They're all part of the same conspiracy. So was it an antitrust violation in 89 when these housing protocols were put in place? It may have been. Any housing requirement, if the purpose is to make money at the expense of private sector, it may well violate antitrust laws. But I'm focused on the facts of this case. The facts of this case suggest a need to address a threshold question, I think. And that is, because defendants claim here that the only anti-competitive conduct that's at issue is conduct of the university. What is it that the foundation did that was anti-competitive? They allowed the university to circumvent mandatory construction requirements. And they helped them. They helped them do it. In an ordinary situation when you look at what is the clear articulation of state policy? Wasn't the foundation acting at the university's direction? At their request, not their direction. They're a private entity. The university doesn't have any control over them. They asked them to help them circumvent statutory requirements. And the foundation said, okay, we'll help you. Let me focus on something you were saying earlier about the purpose. I forget about the question that you didn't get back to me, and I'll come back to that. But you mentioned if the purpose is to, and I think you said something like, circumvent the antitrust laws, or basically you put a profit motive into the purpose. If the purpose is to win a profit, then you're saying there's a problem. But in terms of housing, especially living on campus, there may well be a situation where it's a mixed motive in the typical Pesky Title VII situation, but it may be a mixed motive in that I can easily say a university, and most of them do, want to have first and second year students living on campus as part of their educational mission. But along with that, they're going to derive profit. Now, are you saying that we need to look at how they're prioritizing that? If their main objective is the money, then there's a problem. If their main objective is getting kids into the community and the learning experience that comes from a group of people living together, then it's okay? Well, I don't want to go down the rabbit hole of parietal rules, but my response to your question is, at this point in the process, we were dismissed on a motion to dismiss. We have a complaint with the government that says, that second thing, the laudable goal, the in-local permanence thing is not part of this. It's all about money. And it's about economic gain in the local student housing market. That's what we're here to talk about. So the other idea, although it's interesting, and maybe some facts... Let me ask you a question. Even though that's not what you're thinking today, it's why I came here today, so help me out with this. Do we then start looking into the purpose? Well, if you folks agree with me, and we read it back, we're going to find out why they did it. Because there's going to be factual discovery that I was deprived of. And I think it's going to ultimately affirm what we've averted the complaint, is that this was done purely for financial... If you look at the timing of it, what was done, why it was done, I think it's pretty clear what the reason was. It wasn't because the people who were living directly across the street, 100 yards away, needed to be closer to the campus. That wasn't why they did it. Let me ask a hypothetical of my own that has nothing to do with broccoli. Let's suppose that the foundation raised money, built the highlands, maintained the property, but in this hypothetical there's one important difference. The university never lengthened its residency requirement of any kind. Would there be any anti-competitive conduct under those facts? Well, I think it would be. I noted in the brief that I filed that they didn't just sort of count them and say, put them on the campus. Isn't that where most on-campus housing is related? They're owned by the school, yes. But they're not the school. The foundation is a private entity. When I was a kid, my mom used to have this expression, you can't have your cake and eat it too. I never understood as a kid what that meant. That was the expression from my mom. I finally figured it out. What she meant was you can't cheat the cake and look at it because it's pretty and then also eat it too. You've got to pick one or the other. What these folks did is they circumvented the statutory requirements of the statute to do something that they wouldn't have been allowed to do. By doing that, they privatized. It wasn't going to go to the private sector to do that. Now they want to say, but we're really the same. We're the same, but we're not the same. What is it they did that they wouldn't have been allowed to do? I went through the statutory provisions in what they call the PASHE Code, which is the enabling provision of the Pennsylvania State Hiring Systems Education. It runs the state universities. When they first promulgated that statute, the state universities didn't have construction authority. They couldn't have done this. The Department of General Services, DGS, built all commonwealth buildings under the Procurement Code. They had competitive bidding, advertising, and other requirements. About eight years after that statute was promulgated, they amended it. The legislature did. They said, we're going to allow state universities to do what DGS has been doing. They brought over the same requirements, advertising, competitive bidding. The legislature wanted to be fair. The problem is, for the university, this wouldn't have been constructed because they didn't have the state funding to do it. So what did they do? They privatized by going around the statute. So what if Edinburgh had just increased the residency requirement and not built anything? Same impact on the landlords. Would that be in violation of the antitrust laws? Well, they're not acting with a private party. And that's the whole point. They went to a private party to get around their own requirements. And so by doing so, they sort of hung the foundation out to dry. Let's turn to the ARCA-related issues that are here. Did the district court get it right? I'm sure your answer is going to be no, but the district court essentially applied, if so, FACTA immunity, didn't it? Yeah, and the district court didn't get it right because she didn't apply the Mid-Cal test. And I go into some detail about what was wrong there. If you look at the IPSO FACTA language from Hoover... Mid-Cal applies ordinarily to private entities. Is that right? No. Mid-Cal can apply... Well, technically, yes, because Tannehall would apply to municipal governments and that sort of thing. And here we have a... The foundation is a private entity. Mid-Cal also applies to the conduct of the state officials. If you look at A.B. or A.D. Bedell, for example, it applies to the entire scheme that you're analyzing. Why would it fail the Mid-Cal test if the judge applied it? In A.D. Bedell? No, in this case. Why are you saying that the court here... That's what you said. Well, it's the court here not applying the Mid-Cal test. The first thing that you have to do, if you look at Hoover, Hoover says if the state legislature passes a statute, that's a state action, IPSO FACTA immunity. If a high court of the state acts in a legislative capacity, issues a ruling that's legislative in nature, IPSO FACTA immunity. If an executive branch agency official does something, that requires what the court said, closer analysis. And the closer analysis that this court used in A.D. Bedell is the Mid-Cal test. And so here you have essentially, I don't know how many people actually were involved with this, but certainly with the student hazard restriction, one executive branch official. How would the result be different? That's what I asked. How would the result be different had the court applied Mid-Cal? The first test has miserably failed. And one of the things that I got into is in the Aroria case, which is factually on all fours of this case, it's out of Colorado. It's on appeal, isn't it? It's on appeal. It's on appeal, isn't it? It is on appeal, and I checked it yesterday, and there's no decision yet. Is the university structured the same in that case? In this case, in terms of the policy, if you look at the Pasci statute on this one, with regard to, you have to look at which policy goes with which action. If you look at the policy that goes with the construction, then you look at Section 203A.1 of the Pasci statute that says competitive bidding, blah, blah, blah. If you look at the student housing restriction, then you've got to look at, well, what authorized the one institution president, only one person, to change that? And it's very generic. I mean, it's like one sentence, and it just says, the university president can issue policies to further the mission,  That's almost the exact same language that was looked at by the district court in Aroria. And he said, that's not good enough, even with a foreseeability test, to think that the institution president would pass a housing policy for economic purposes. And so, we're on all fours with that. In your reply brief, you make a suggestion that alley analysis makes sense. I think that's how you put it. I didn't say that. Is that a fallback position? Well, it's inconsistent with A.D. Cabell. And A.D. Cabell, this court said, if you have an executive official that's just kind of doing their own thing, which is part of what's going on here, you look at MidCal. The court didn't really get into an additional discussion about, well, sometimes circumstances are such that maybe we should only apply the alley test. But in Aroria, the court looked at that, and said, the relationship between the state and this state university is very similar to the relationship between the state and a municipality. And for that reason, rather than apply both parts of the test, they only applied the first part of the test, which I'm comfortable with. Because I think, in this case, the test has miserably failed. Mr. Wolford, we'll have you back in rebuttal. Thank you very much. Mr. McCullough. Good afternoon, Your Honors. My name is Matthew McCullough, and I'm here on behalf of Edinburgh University Foundation. Your Honors, this case is controlled by Parker. Representing the Foundation, I've found no simpler way to say this, but the University drove this bus, and the Foundation was there. Your private foundation. Yes. Why shouldn't VidCal review apply? Because the actions that caused the alleged antitrust injury, which is the threshold question we have to have answered, were directly resulted from actions of the state. Actions of the University. What were the actions here? As alleged by the plaintiffs, or the appellants, the actions include... Resolution dismissed, and that's what we have. Well, my position is they don't allege an antitrust injury in their complaint flowing from the building of the Highlands themselves, or the relationship between the University and the Foundation. It's very clear in their complaint they even have a section, their medical, I'm sorry, a section called Antitrust Injury to Plaintiffs. I believe it's paragraph 64. Very clear. As described in paragraph 50, which I will return to, the occupancy rates in plaintiff's facilities have declined substantially since the 2011 housing restriction went into effect. Consequently, revenues generated by plaintiff's facilities have dropped substantially, causing great economic harm to plaintiffs. There are... That concept, that allegation, tied to the 2011 housing restriction, I call it the amended policy, is repeated numerous times from paragraphs 48 to paragraph 64. There is no allegation specifically, there's background about how the University and the Foundation entered into this partnership, this public-private partnership, like at least ten of the other PASCI institutions in this Commonwealth have done over the years in order to construct their housing. So, as planned, and this is a motion to dismiss, the only antitrust injury alleged derives from the amendment of the housing policy in 2011. I am prepared to address the broader concept of the partnership because... What we need is a predicate though, to reach a conclusion that the University is a sovereign actor, right? The University is a sovereign actor. Right. Yes. And that is why. And that... I'm sorry, your question is that is why? And that is why. Yes. Why are they a sovereign actor? It may sound obvious but just as a fact. Well, this court has held that on numerous occasions. They are considered to be the arm and alter ego of the state. The enabling statute says that they are established by the legislature of PASCHE and the PASCHE... Extrapolate that down to the foundation. I'm sorry? Extrapolate that down to the foundation. Well, the foundation like again, many private and public universities have foundations, private entities with whom they engage in a variety of different activities. Mr. Wolf, part of the point is that the reason for the foundation here is to basically get around all the market-based competitive requirements in the statute in the PASCHE state. Well, that's a unsupported and very conclusory allegation that they frankly didn't even raise in their metaplating either. It's developed through briefing. The fact is if there was and as a matter of fact the police did require everybody to abide by the procurement laws that any avoidance of the procurement laws is what we're really talking competitive bidding had to do with the construction of the housing itself not the amendment of the policy which caused the injury that's complained of by the appellants. So, I guess the initial point I would make is it's really not germane how they got there. Secondly, under Omni Columbia City of Columbia versus Omni Advertising this court under principles of federalism doesn't look behind the manner in which the state acts but rather simply said did the authority the state have the authority to do what it did. And clearly the enabling statute for provide appropriate educational and student living facilities. That's the very first thing they provide in the enabling legislation. So, clearly the university had the authority to provide the housing they provided how they got there is not with all due respect an issue the federal courts get into in an antitrust situation as long as there was authority to engage in the act. Well, that's what's completed is a Sherman Act violation. Clearly there's a question about jurisdiction there's no issue here as to abstention we're dealing with a federal issue that also implicates an exception and so we're by way of forms of immunity that might apply here, right? The district courts apply ipso facto immunity but I'm not sure that's right. The district court applied Parker immunity because the district court viewed all of the anti-competitive acts as well as the anti-competitive injuries resulting from those acts as having been the direct result of actions of the university acting within the authority that it was granted by the statute. Under those circumstances Parker governs because Parker says that when the state acts in conjunction with or in collaboration with a private party if it's the state that's doing the acting that private party also is immunized. Otherwise every single antitrust plaintiff would be end running by suing the private party with whom the state may have contracted. If this district court had applied Med-Cal would it have come to the same place? Yes, your honor they would. We took the position that it wasn't necessary to get there but yes the clearly articulated derives from the statutory scheme. The requirement that they provide appropriate educational facilities including appropriate student facilities. Is it a statutory scheme or a regulatory scheme? It's a statute that creates a PASHE system and then provides powers authorities checks and balances reviewed by the different layers in the PASHE system. The lowest layer being the university and university presidents that are governed by a council of trustees who then are reviewed and accountable to the PASHE board. It's a statute that created the PASHE system and sets forth its powers and structure. Would that be an easier way to get to the same place? Yes, your honor and I'm glad you raised it because I didn't mean to leave that out. The district court did not rule on that but that's an entirely different and actually a broader immunity than Parker is. Let me specifically address the amendment of the policy because that is the injury they complain of. They admitted in their briefs and pleadings that the university sets the rates for the housing and established the policy in the first place and amended the policy. Foundation had no ability to do that but let's assume through discovery the worst case scenario is that the executive director of the foundation ran across the commons to the university office of the president and said you need to do something I need more students because I can't pay the bonds so the university changes its policy for the exact reason Mr. Wilford contends that is clearly petitioning the university to   policy and that is the reason why the university is not doing what it should be doing and that is the do and        not do it for them and not do it for them but for them not do it for them not do    not do it for them not do do them do it for them should do them do them do them do them do them do them do them do them do them do  do them do them do them do them do them do them do them do them   do them do them do them do